Laurence ("Laird") J. Lucas (ISB# 4733)
Marc Shumaker (ISB# 9606)
Advocates for the West
P.O. Box 1612
Boise, ID 83701
208-342-7024
llucas@advocateswest.org
mshumaker@advocateswest.org

Attorneys for Plaintiff Cecil D. Andrus

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CECIL D. ANDRUS, | ) | No.  1:15-cv-453-BLW |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **PLAINTIFF'S COMBINED** |
| vs. | ) | **OPENING/RESPONSE BRIEF** |
| | ) | **ON CROSS-MOTIONS FOR** |
| UNITED STATES | ) | **SUMMARY JUDGMENT** |
| DEPARTMENT OF ENERGY | ) | (*Docket  Nos. 11 & 15*)* |
| | ) | |
| *Defendant.* | ) | |

    * This brief consists of Plaintiff Governor Andrus's opening brief in support of his motion for summary judgment, filed herewith (*Docket No. 15*); and his response brief opposing Defendant DOE's motion for summary judgment, filed on February 19, 2016 (*Docket No. 11*).

## INTRODUCTION

Former Idaho Governor Cecil D. Andrus seeks summary judgment to compel the disclosure of documents wrongly withheld or redacted by Defendant U.S. Department of Energy ("DOE") under the Freedom of Information Act ("FOIA") and DOE's own FOIA regulations.

Governor Andrus submitted a FOIA request to DOE in January 2015 seeking documents relating to DOE's December 2014 request that Idaho officials waive a key provision of the 1995 Batt Settlement Agreement over clean-up of nuclear wastes at the Idaho National Laboratory ("INL"), so that DOE could send two shipments of commercial spent nuclear fuel to INL. Despite high public interest in the issue, DOE "stonewalled" Governor Andrus, failing to respond for months past FOIA's statutory deadline.  And when DOE finally turned over some documents last summer and fall, they were so heavily redacted that virtually no useful information was provided.  *See* Attachments A and B hereto (copies of redacted documents).

As explained below, DOE's vague privilege claims have shifted over time, and fail to carry DOE's burden to justify withholding the requested information.  Moreover, Governor Andrus has properly brought his FOIA claims along with the APA claim to challenge DOE's violation of its own regulations requiring release of information in the public interest.  The Court should thus grant summary judgment for Governor Andrus, deny DOE's summary judgment motion (*Docket No. 11*), and order disclosure of the requested documents.

## BACKGROUND

### The 1995 Batt Agreement

Under Governor Andrus's leadership during his final term in office, the State of Idaho challenged DOE's mismanagement of nuclear wastes at the INL, resulting in federal litigation before this Court.  *See* Plaintiff's Separate Statement of Undisputed Facts ("SOF"), ¶ 1.  Shortly

after Governor Batt succeeded Governor Andrus, the litigation was settled in 1995 by the Batt Agreement.  SOF ¶ 2; *Docket No. 11-5*, Ex. A (copy of Batt Agreement).  The Batt Agreement requires DOE to treat and remove a variety of nuclear-contaminated wastes stored at INL.  *Id.* New shipments of defense nuclear wastes to INL are severely restricted and contingent on DOE's obligations to cleanup and remove wastes already stored there.  *Id.*

Paragraph D.2.e of the Batt Agreement further prohibits (with one exception not relevant here) shipments to INL of spent nuclear fuel from <u>commercial</u> power plants, until a permanent storage facility for commercial spent fuel has been established outside of Idaho.  SOF ¶ 3.  To date, DOE does not have such a permanent storage facility.

On January 6, 2011, Idaho Governor C.L. "Butch" Otter and Idaho Attorney General Lawrence Wasden executed a Memorandum of Agreement with DOE ("2011 MOA") which provided that DOE could seek – and Idaho might grant – a waiver of paragraph D.2.e to allow future shipments of "research quantities" of commercial spent nuclear fuel to INL.  SOF ¶ 4.

In December 2014, citing the 2011 MOA, DOE requested "conditional approval" from Governor Otter and Attorney General Wasden to waive paragraph D.2.e. of the Batt Agreement for two proposed shipments of commercial spent nuclear fuel to INL.  SOF ¶ 5.  Neither Idaho nor DOE provided advance public notice about the December 2014 waiver request. SOF ¶ 6. [1]

After becoming aware of the waiver request, Governors Andrus and Batt publicly voiced their opposition because DOE has not established a permanent storage facility for commercial spent nuclear fuel outside of Idaho, and has missed key milestones under the Batt Agreement to treat highly radioactive liquid waste stored at INL. SOF ¶ 6.

---

[1] Although DOE seeks to minimize the significance of the proposed commercial spent nuclear fuel shipments by describing them as "research quantities," DOE has briefed Idaho's Leadership in Nuclear Energy ("LINE") Commission on the possibility of future "research" at INL involving more than 20 metric tons of commercial spent fuel.  SOF ¶ 30.

**Plaintiff's FOIA Request**

On January 22, 2015, Governor Andrus submitted a FOIA request to DOE seeking all documents relating to the 2011 MOA and the December 2014 waiver request. SOF ¶ 7.  On March 18, 2015, Governor Andrus agreed to narrow the scope of his request to just the December 2014 waiver request.  SOF ¶ 8. On April 28, 2105, Governor Andrus also agreed that DOE's search for records could be limited to the time period between January 1, 2012, and January 22, 2015.  *Id.*

**DOE's July 2015 Initial Response**

In spite of Governor Andrus's willingness to work with DOE, the agency failed for many months to provide any responsive documents, in violation of the 20 working day deadline imposed by FOIA. SOF ¶ 9; 5 U.S.C. § 552(a)(6)(A).  DOE eventually produced an initial response on July 10, 2015.  SOF ¶¶ 9-12.  In that July 2015 response, DOE provided a letter, an index of documents released, and 41 documents, most of which were heavily redacted.  *Id.*  The letter and index explained that DOE "partially" withheld information from 30 of the documents under FOIA Exemption 5. *Id.*

Although DOE has filed the July 2015 letter and index with the Court (*Docket No. 11-5, Ex. 4*), it failed to include the redacted documents from the July 2015 response, so they are submitted as Attachment A herewith.  SOF ¶ 10.  As Attachment A shows, DOE applied FOIA Exemption 5 to redact huge amounts of information, leaving only a few documents or passages that were already publicly known, such as press articles and the December 2014 waiver request itself.  *See* Attachment A.

DOE's index did not attempt to describe the information withheld under Exemption 5, nor identify any reasonably foreseeable harm to justify withholding this information.  SOF ¶¶ 11-

12.  DOE supplemented the index by labeling redactions within each document with the asserted FOIA Exemption number.  *See* Attachment A. The coded redactions provide virtually no context for determining whether FOIA Exemption 5 was properly asserted because the solid redactions typically cover the entire message body of emails and span several pages without interruption. *Id.*  Thus, it is impossible to determine why DOE asserted Exemption 5, or whether DOE took any steps at all to segregate non-exempt information. SOF ¶ 11-12.

The July 2015 letter stated that it was a "final" response for DOE's Office of Nuclear Energy ("NE"), Office of the Executive Secretariat ("ES"), Office of Congressional and Intergovernmental Affairs ("CI"), and the Idaho Office of Operations ("ID").  SOF ¶ 13.  It stated that Governor Andrus had 30 calendar days to file an administrative appeal.  SOF ¶ 14.

### Plaintiff's Administrative Appeal

On August 10, 2015, Governor Andrus timely filed an administrative appeal, in conformance with the DOE's FOIA appeal regulations and the July 2015 response letter. SOF ¶ 15.  The appeal explained that DOE's conclusory and generalized statements did not provide the "detailed justification" required under FOIA for withholding information under Exemption 5, and that DOE failed to take reasonable steps to segregate non-exempt information.  SOF ¶ 16. The appeal also requested that DOE follow its own regulations and release all material withheld under Exemption 5 because disclosure is in the public interest.  SOF ¶ 17.

On August 20, 2015, DOE's Office of Hearings and Appeals ("OHA") denied the appeal. SOF ¶ 18; Attachment C hereto.  Echoing DOE's July 2015 response, OHA's rationale for withholding information simply restated the statutory language of the claimed exemptions.  *Id.* OHA also failed to identify any reasonably foreseeable harm to DOE that would be caused by releasing the information in the public interest under its regulations.  *Id.*

OHA's decision stated that it was "a final order of the Department of Energy from which any aggrieved party may seek judicial review pursuant to the provisions of 5 U.S.C. § 552(a)(4)(B)." *Id.* Accordingly, Governor Andrus filed this action to compel disclosure of the withheld information on September 29, 2015. *See Docket No. 1* (original complaint).

**DOE's October 2015 Final Response**

Despite having previously informed Governor Andrus of his right to administratively appeal, DOE provided a second FOIA response shortly after this litigation was filed, on October 5, 2015. SOF ¶¶ 20-22. The October 2015 response included a second index and stated that DOE was providing 38 additional documents from the Office of General Counsel (labeled "GC 1-38"). *Id.* DOE again has not provided the actual documents to the Court, so they are submitted herewith as Attachment B. SOF, ¶ 22; Attachment B hereto.

As shown on Attachment B, DOE asserted Exemption 5 to redact virtually all information from 33 of these 38 documents, claiming deliberative process, attorney-client, and attorney work product privileges. *Id.*; SOF ¶ 22-23. The October 2015 response letter's exemption explanations were copied nearly verbatim from the July 2015 response letter. SOF ¶ 23. Neither the response letters nor the redacted documents indicated which privilege applied to any specific document or redaction. *Id.*

The October 2015 response letter stated that it "is the final response" by DOE to Governor Andrus's FOIA request. SOF ¶ 20. The response also contained a new statement that segregation of factual information was impossible because it was inextricable intertwined with privileged information. SOF ¶ 24. This segregability statement only applies to the 33 heavily redacted documents from GC in the final response.

Shortly after receiving the October 2015 final response, Governor Andrus amended his complaint to challenge the improper redaction and withholding of the GC documents. *See* First Amended Complaint (*Docket No. 3*).

**DOE's Draft and Final *Vaughn* Indexes**

Through this litigation, DOE counsel provided a draft *Vaughn* index in December 2015. SOF ¶ 26; Attachment D hereto.[2]  The draft *Vaughn* index was the first time DOE attempted to provide a document-specific justification for withholding information under the claimed FOIA Exemption 5 privileges.  *Id.* The draft index asserted multiple privileges for many documents, but did not indicate which privilege applies to specific redactions within each document.  *Id.*

On February 19, 2016, DOE submitted its final *Vaughn* index to the Court with its motion for summary judgment.  SOF ¶ 27; *Docket No. 11-2.*  The final *Vaughn* index is double the length of the draft index, and made 42 changes to the privilege assertions within 29 redacted documents. *Id.*  Like the draft index, the final *Vaughn* index did not indicate which privilege applies to specific redactions within each document where multiple privileges are asserted.  *Id.*

The final *Vaughn* index added 6 new assertions of the deliberative process privilege (documents GC-3, GC-5, GC-15, GC-16, GC-34), 4 new assertions of the attorney work product privilege (GC-7, GC-8, GC-10, GC-15), and 18 new assertions of the attorney-client privilege (GC-3, GC-5, GC-7, GC-8, GC-12, GC-16–GC-18, GC-25, GC-26, GC-28–GC-33, GC-35, GC-36).  SOF ¶ 28. The final index also dropped thirteen assertions of the attorney work product privilege (NE-15, NE-16, NE-20–NE-22, GC-1, GC-2, GC-4, GC-5, GC-16, GC-28, GC-30, GC-34), and one assertion of the attorney-client privilege (GC-34).  SOF ¶ 29.

---

[2] A "*Vaughn*" index is used to identify claimed exemptions in FOIA litigation, following *Vaughn v. Rosen,* 484 F.2d 820, 827 (D.C. Cir. 1973).

<u>**ARGUMENT**</u>

**I.      SUMMARY JUDGMENT IS PROPER ON PLAINTIFF'S FIRST CLAIM.**

The Court should grant summary judgment to Governor Andrus on his First Claim for

Relief, which alleges that DOE violated FOIA's statutory deadline in failing to respond to his

FOIA request for many months.  *See* First Amended Complaint (*Docket No. 3*), ¶¶ 50-56.

Again, Governor Andrus submitted his FOIA request in January 2015, but DOE did not

provide its initial response until July 2015, and then gave Governor Andrus its "final" response

in October 2015.  SOF ¶¶ 8, 11, 26.   FOIA imposes an express statutory deadline of 20 working

days for agencies to response to FOIA requests.  5 U.S.C. § 552(a)(6)(A).  Thus, DOE

unquestionably violated FOIA here in its belated responses.

DOE contends that the First Claim is moot because DOE did provide its July and October

2015 responses along with responsive documents.  DOE Opening SJ Brief, at 6.  However,

claims for violating FOIA's response deadline are not mooted by an agency's later production of

documents when "(1) the agency's FOIA violation was not merely an isolated incident, (2) the

plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a

sufficient likelihood of future harm by the policy or practice." *Hajro v. U.S. Citizenship and

Immigration Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2015). Governor Andrus's deadline claim

here meets all three prongs of the 9th Circuit's test.

Both of DOE's responses far exceeded FOIA's 20 working day deadline, taking two

months and five months, respectively, after Governor Andrus agreed to limit the request.  SOF ¶

8.  More importantly, Governor Andrus <u>still</u> has not received the information he requested,

because DOE continues to unlawfully withhold requested information, meaning that his deadline

violation claim remains ripe.  *See Citizens for Responsibility and Ethics in Wash. v. Fed.*

*Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013) ("*CREW*").  This is thus not merely an isolated incidence of a late FOIA response.

Governor Andrus's efforts to inform the public regarding DOE's implementation of the Batt Agreement and proposed commercial spent nuclear fuel shipments to INL have been significantly impaired by DOE's violation of FOIA's deadline, because he has still not received the requested information. Governor Andrus has been involved with DOE on these issues for the past several decades, will continue to rely on FOIA's disclosure provisions to gain needed information from the secretive federal agency, and will be harmed if DOE can continue flouting its FOIA duties.

Simply put, DOE has improperly "stonewalled" a former Idaho governor and prominent critic of DOE's management of nuclear wastes at INL, who is seeking information on a matter of high public importance.  DOE's belated, inadequate, and unlawful response to Governor Andrus's legitimate FOIA request should not be condoned by the Court.  Summary judgment should be granted on the First Claim for Relief to ensure that DOE complies with FOIA.

## II.   SUMMARY JUDGMENT IS PROPER ON THE SECOND CLAIM BECAUSE DOE HAS FAILED TO CARRY ITS BURDEN OF PROOF.

Summary judgment should also be granted for Governor Andrus on his Second Claim for Relief, which alleges that DOE violated FOIA by misapplying Exemption 5 in withholding and redacting documents under the claimed deliberative process, attorney-client, and/or attorney work product privileges.  *See* First Amended Complaint, ¶¶ 57-59.  Because DOE has made a variety of privilege claims here – which seem to be constantly changing – detailed analysis is provided below to demonstrate that Governor Andrus is entitled to summary judgment.

### A.      DOE Has The Burden To Justify Its Claimed Exemptions.

Under FOIA, the government must release requested information unless it falls under one of nine discretionary FOIA exemptions. *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2011). Exemptions must be narrowly construed, and the agency bears the burden of proving that an asserted exemption applies to withheld information. *Id.* at 688-89.

To meet that burden in court challenges, agencies usually submit a *Vaughn* index and affidavits that provide a detailed description of the information withheld, the exemption claimed, and a "particularized explanation of why each document falls within the claimed exemption." *Id.* at 688. The agency's *Vaughn* index and affidavits must be "detailed enough to allow the court to make an independent assessment of the government's claim [of exemption]." *Id.* "Courts must apply that burden with an awareness that the plaintiff, who does not have access to the withheld materials, is at a distinct disadvantage in attempting to controvert the agency's claims." *Maricopa Audubon Soc'y v. U.S. Forest Service*, 108 F.3d 1089, 1092 (9th Cir. 1997).

Even when an agency has properly asserted a FOIA exemption to withhold information, FOIA requires that it still must release any "reasonably segregable" portion of the withheld record, such as facts versus opinions.  5 U.S.C. § 552(b). The agency again bears the burden to establish that it has segregated and released non-exempt information from redacted portions of documents. *Pacific Fisheries Inc. v. USA*, 539 F.3d 1143, 1148 (9th Cir. 2008).  In meeting this burden, agencies are held to the same standards required for withholding information under FOIA exemptions. *Id.*  Thus, segregation affidavits must be detailed enough for the Court to make an independent determination that all reasonably segregable portions were released for each redacted document. *Id.*  Conclusory statements or "boilerplate explanations" drawn from an agency's "master response" are insufficient. *Weiner v. FBI*, 943 F.2d 972, 978 (9th Cir. 1991).

**B.      DOE's *Vaughn* Index Is Incomplete and Omits Eight Documents.**

DOE's final *Vaughn* index (*Docket No. 11-2*) completely <u>omits</u> any discussion of the

privileges claimed by DOE for eight (8) documents (numbers CI-3 through CI-10), which contain

extensive redactions under Exemption 5.  *Compare Docket No. 11-2* with Attachment A.

Because DOE's *Vaughan* index wholly omits these 8 documents, DOE has failed to carry its

burden of proving the applicability of Exemption 5 for these documents under the standards above;

and hence the Court must enter summary judgment for Plaintiff and order their full disclosure.

**C.      Four Of The Eight Omitted Documents Are Plainly Not Privileged.**

Moreover, four of the omitted documents (CI-3 through CI-6) are communications between

DOE and Congress, and thus are not shielded under Exemption 5 anyway.  *See* Attachment A.  These

documents are emails between DOE and Congressional staffers each entitled "Idaho Update."  *Id.* [3]

FOIA defines "agency" to mean "each authority of the Government of the United States . . .

but does not include . . . the Congress."  5 U.S.C. § 551(1).  Documents intended to inform Congress,

which did not inform the agency's deliberative process, are not shielded under Exemption 5.  *Dow*

*Jones & Co. v. D.O.J.*, 917 F.2d 571, 574-75 (D.C. Cir. 1990); *Rockwell Int'l Corp. v. D.O.J.*, 235

F.3d 598, 604 (D.C. Cir. 2001).  Because these four email "updates" to Congress are thus not

privileged under FOIA, the Court should grant summary judgment as to them and order their

disclosure.

**D.      DOE Has Not Properly Asserted The Deliberative Process Privilege.**

Aside from the 8 documents omitted from DOE's *Vaughn* index, DOE has failed to carry

its burden of demonstrating the applicability of the deliberative process privilege that it claimed

---

[3] These four "update" emails with Congressional staff thus belie DOE's assertion that "<u>all</u> of the documents DOE redacted were emails <u>exclusively</u> between DOE employees."  *See* DOE Opening SJ Brief, p. 12 (emphasis added).

to withhold or redact most of the documents in Attachments A & B, thus warranting entry of summary judgment for Governor Andrus as to all these documents.

To qualify under the deliberative process privilege, a withheld record must be both "pre-decisional" and "deliberative." *Assembly of the State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). A record is "pre-decisional" if it was "prepared in order to assist an agency decisionmaker in arriving at his decision," and it is "deliberative" if "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* Information is not "pre-decisional" merely because it references "a decision that possibly may be made at some undisclosed time in the future," or "predates a decision chronologically." *Id.* at 921. DOE must "identify a specific decision to which the document is predecisional." *Maricopa Audubon Soc'y*, 108 F.3d at 1094.

Here, DOE is broadly construing the FOIA request and its responses in an attempt to frame everything the agency does as part of a pre-decisional process that implicates the deliberative process privilege. The Court should reject this broad-brushed approach for not satisfying DOE's FOIA burden of proving specifically why a claimed exemption applies.

First, DOE asserts that its negotiations with Governor Otter and Attorney General Wasden regarding the requested waiver of the Batt Agreement are pre-decisional because the negotiations are ongoing and there has been no final agreement. DOE Opening SJ Brief, at 14. But DOE's assertion is an overbroad reading of Exemption 5, because "[p]redecisional materials are not exempt merely because they are predecisional; they must also be a part of the deliberative process within a government agency." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 257 (D.C. Cir. 1977). *See also Assembly of the State of Cal.*, 968 F.2d at 92. Thus the

fact that no final agreement has been reached between DOE and Idaho is not relevant unless

DOE also shows that the withheld information is deliberative.

To support the assertion that the withheld information is deliberative, DOE merely states

that the documents "were written by individuals within DOE without decisionmaking authority."

DOE Opening SJ Brief, p. 14. However, the decision-making authority of a document's author

is relevant to the pre-decisional nature of the document, not the deliberative nature. *See*

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 188 (1975). Regardless,

DOE has not identified the title or authority level of the DOE employees involved, and many of

the DOE authors appear to have significant decision-making authority. For example, the manager

of DOE's Idaho Operations Office, Richard B. Provencher, signed the December 2014 letter to

Governor Otter requesting the waiver of the Batt Agreement, and he is also listed as an author for

five partially withheld documents (NE-20, NE-21, NE-22, GC-6, GC-7) where DOE asserted the

deliberative process privilege.  *See Vaughn* Index at 12-15, 27, 28 (*Docket No. 11-2*).

The actual test for determining whether information is deliberative is whether disclosure

would "reveal the mental processes of decision-makers." *Assembly of the State of Cal.*, 968 F.2d

at 921.  Factual information is usually not deliberative and must be disclosed.  *Id.*  Here, DOE

has merely provided repeated boilerplate assertions that "[r]elease would have a chilling effect

on DOE decision-making processes and cause public confusion about the reasons for any DOE

decision." *See Vaughn* Index (*Docket No. 11-2*).  Such conclusory statements cannot satisfy

DOE's burden.

DOE cites *Mead Data Center, supra*, 566 F.2d at 257, to support its position that the

withheld information is deliberative.  But in *Mead*, the government was held to properly

withhold information under the deliberative process privilege which reflected internal

communications in negotiations with a contractor for a license to use copyrighted information. *Id.* Here, by contrast, DOE is invoking Exemption 5 to withhold established agency positions and interpretations of the Batt Agreement and the 2011 MOA, which are not privileged. Therefore, DOE has failed to establish that the information related to the waiver request is actually deliberative.

DOE also argues that it withheld information which contributed to decisions regarding "the nature of studies to be performed, where to conduct the studies, and whether to obtain ownership of Dominion Virginia Power's fuel for the studies" relating to the proposed shipments. DOE Opening SJ Brief, at 13. But the December 2014 waiver request established that DOE's decision to seek a waiver for the two proposed shipments to INL was already made, and DOE was seeking permission from the State of Idaho to carry out its plans. *See* Letter to Gov. Otter, Dec. 16, 2014 (*Docket No. 11-5*, Ex. C). In fact, DOE's final response includes a completely redacted transfer of the title agreement signed by Dominion Virginia Power, confirming this fact. *See* Attachment B, document GC-34.

Because DOE has thus failed to provide the detailed showing necessary to carry its burden of establishing the claimed deliberative process privilege, the Court should grant summary judgment for Governor Andrus on all documents that DOE withheld or redacted under that claimed privilege, and order their full production.

### E.    DOE Failed To Take Reasonable Steps To Segregate Factual Information.

As noted above, DOE bears the burden to establish that it has disclosed all reasonably segregable portions of the released documents after redacting only the exempt portions. 5 U.S.C. §§ 552(a)(4)(B) & 552(b). This burden may be met with affidavits that provide "reasonably

detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an Exemption." *Pacific Fisheries Inc.*, 539 F.3d at 1148.

In *Pacific Fisheries*, a single conclusory affidavit was insufficient to meet the agency's burden. *Id.* at 1150. The same situation is present here.  DOE has provided only a single affidavit from its FOIA Officer containing the conclusory statement that DOE "made a good faith effort to redact only those portions of documents . . . that were either nonresponsive or subject to a statutory Exemption . . . ." *Docket No. 11-5,* Exh. D, ¶ 12.  DOE's July 2015 response letter did <u>not</u> include any statement regarding DOE's efforts to segregate non-exempt information, and the final October 2015 letter merely contained a broad statement that applied to the documents it provided.  *See Docket No. 11-5,* Exs. 4 & 6.  Furthermore, DOE's *Vaughn* index does not address the segregability requirement for any specific documents.  *See Docket No. 11-2*. DOE's submissions thus fail to provide specific facts to carry its burden of showing that it properly segregated disclosable facts from documents claimed to have deliberative process privileged information.

In *Hamden v. U.S. Dep't of Justice*, 797 F.3d 759, 781 (9th Cir. 2015), the government completely redacted documents for the same reason and provided "little individualized information about the withheld documents."  The Ninth Circuit vacated the district court's grant of summary judgment on segregability, because the completely redacted documents did not give the district court "the opportunity to observe the [government's] approach to redaction." *Id.* Additionally, the Ninth Circuit noted that the government's declarations were not entitled to a presumption of good faith because some of them were self-contradictory.  *Id.*

Here, as in *Hamden*, DOE's wholesale redaction of entire pages and paragraphs under Exemption 5 (or as "non-records") in nearly every responsive document does not allow this

Court to observe DOE's approach to redaction.  *See* Attachments A & B.  And DOE has contradicted itself regarding the privileges claimed under Exemption 5 – DOE has changed its position 42 times regarding which Exemption 5 privilege applied to certain withheld documents. SOF ¶¶ 28-29.  In fact, DOE completely dropped its original privilege claims and is now relying on entirely different privileges for three withheld documents (GC-5, GC-16, GC-34).  *Id.*  Thus, DOE is not entitled to the presumption that its declarations are made in good faith; and the Court should grant summary judgment to Governor Andrus on the issue of segregability.

**F.     DOE Has Not Properly Asserted The Attorney-Client Privilege.**

DOE correctly recites the Ninth Circuit's eight-part test for determining the applicability of the attorney-client privilege.  *See* DOE Opening SJ Brief, p. 16.  However, the D.C. Circuit has distinguished government attorneys from private attorneys because the former have the power to make law.  *Tax Analysts v. I.R.S.*, 117 F.3d 607, 619 (D.C. Cir. 1997). Thus, the D.C. Circuit held that authoritative interpretations of agency law, *i.e.* "private law," are not protected under Exemption 5.  *Id.*

Similarly here, DOE's Office of General Counsel was likely providing legal interpretations regarding the 1995 Batt Settlement Agreement and how the 2011 MOU applied to the two proposed shipments of spent commercial nuclear fuel at issue in the December 2014 waiver request.  DOE cannot rely of the attorney-client privilege to hide these authoritative interpretations from the public.  *See id.*

DOE's GC responsive documents (Attachment B) are so heavily redacted and the *Vaughn* index so vague that it is impossible to determine whether DOE properly asserted the attorney-client privilege. None of the documents withheld under attorney-client privilege are labeled "confidential," thus placing doubt on DOE's assertion that the communications were intended to

be confidential.  *See* Attachment B.  Moreover, all 37 of the challenged documents contain huge block redactions that include both deliberative process and attorney-client privilege claims. *Id.* Thus, it is impossible to evaluate which portions of each document may fall under the attorney-client privilege, let alone whether the privilege was properly asserted.

Finally, 26 of the challenged documents (NE-15, -16, -20 to -22; GC-7, -8, -10, -12, -15, -17, -18, -22, -25-35, -37, -38) appear to be e-mails where DOE attorneys were included in the e-mail chain for informational purposes, not to seek their legal advice.  *See* Attachment B. Simply copying an attorney in an email chain cannot justify withholding the email under the attorney-client privilege.  *Willnerd v. Sybase, Inc.*, No. 1:09-cv-500-BLW, 2010 WL 5391270 at *5 (D. Idaho Dec. 22, 2010).

Accordingly, the Court should grant summary judgment for Plaintiff on the attorney-client privilege claims, and order production of these documents in full.

### G.      DOE Has Not Properly Asserted the Attorney Work Product Privilege.

The attorney work-product privilege protects documents prepared by an attorney in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947). The privilege "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated." *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992). However, "the policies of the FOIA would be largely defeated" if agencies could withhold documents "simply because litigation might someday occur." *Senate of P.R. v. DOJ*, 823 F.2d 574, 586 (D.C. Cir. 1987).  Here, DOE has failed to establish that there was any foreseeable litigation at the time the withheld documents were created.

DOE's brief (p. 17) asserts that information withheld under the attorney work product doctrine was prepared in anticipation of potential litigation with the State of Idaho regarding

resolution of a Notice of Violation ("NOV") issued by the Idaho Department of Environmental Quality.  But that NOV claim is a smoke-screen to hide the real issue here – it concerned DOE's violations of a 1992 consent decree over hazardous waste storage and cleanup at INL, and has no relationship to the proposed commercial spent fuel shipments or waiver of paragraph D.2.e of the Batt Agreement at issue in Governor Andrus' FOIA request. The Court should thus order production of the documents withheld under the claimed attorney work product privilege.

### III.    DOE'S EXHAUSTION ARGUMENT SHOULD BE REJECTED.

DOE's brief (p. 8) argues Governor Andrus did not file an administrative appeal of the October 2015 response, and thus his claims regarding that response should be dismissed for failing to exhaust administrative remedies.  This effort to avoid responsibility for DOE's FOIA violations is unavailing.

FOIA provides that a requester may go straight to district court if the agency fails to make a determination within the 20 working days response time provided in the statute. 5 U.S.C. § 552(a)(6).  As already explained, DOE violated FOIA by failing to respond to the January 2015 FOIA request for many months beyond the statutory deadline.  Because Governor Andrus filed his complaint with this Court on September 29, 2015, before receiving DOE's "final" October 2015 response, he was not required to exhaust administrative remedies. *Id.; Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 63-64 (D.C. Cir. 1990) (a late final response must be administratively appealed only when the requester receives it before filing a complaint).

Moreover, Governor Andrus did file an administrative appeal of DOE's July 2015 response, as he was advised to do.  He raised the same arguments challenging DOE's improper privilege assertions as presented here, which OHA summarily rejected.  *See* Attachment C. Exhaustion is not required because DOE has not been deprived of an opportunity to apply its

discretion by allowing this action to continue without interruption for a second appeal on

identical issues. *See In re Steele*, 799 F.2d 461, 466 (9th Cir. 1986).  None of the exhaustion

cases cited by DOE resembles these facts, and none compels dismissal of Governor Andrus's

challenges here to the inadequacy of the October 2015 response.[4]

### IV.    SUMMARY JUDGMENT SHOULD BE GRANTED UNDER THE THIRD CLAIM FOR RELIEF AS WELL.

Finally, the Court should grant summary judgment to Governor Andrus under his Third

Claim for Relief, which is brought pursuant to the APA for violation of DOE's own FOIA

regulations.  *See* First Amended Complaint (*Docket No. 3*), ¶¶ 60-61.

DOE's FOIA regulations require it to release information beyond what may be required

by FOIA, when release would be in the public interest and is not prohibited by federal law. 10

C.F.R. § 1004.1.  Under this regulation, DOE may only withhold information under discretionary

FOIA Exemption 5 when it can articulate a reasonably foreseeable harm to an interest protected

by the Exemption.  *Id.*; *see also* Attachment C (OHA appeal denial discussing the regulation).

DOE argues the Court should dismiss the Third Claim because it does not provide any

relief beyond what Governor Andrus may obtain via his FOIA claims.  Yet DOE has previously

acknowledged that this regulation imposes an "extra balancing test" which goes "beyond the

---

[4] *See Hall & Assocs. v. EPA*, 77 F. Supp. 3d 40, 43, 46 (D.D.C. 2014) (exemption claims dismissed because appeal only challenged agency's failure to respond and excessive processing fees); *Dettmann v. U.S. Dep't of Justice*, 802 F.2d 1472, 1476-77 (D.C. Cir. 1986) (challenge to the adequacy of search dismissed because appeal only challenged withholding of specific information); *Kenny v. U.S. Dep't of Justice*, 603 F. Supp. 2d 184, 190 (D.D.C. 2009) (challenge dismissed because administrative appeal only included challenge to scope of search); *Monaghan v. FBI*, 605 F. App'x 596, 599 (9th Cir. 2013) (fee waiver issue improperly raised for first time in response to motion to dismiss); *Texas Roadhouse v. EEOC*, 2015 WL 925894 (W.D. Ky. Mar. 3, 2015) (new request improperly added in response to motion to dismiss); *Miller v. FEC*, 2013 WL 4243044 (S.D. Ohio, Aug. 15, 2013) (exemption challenge raised for the first time in response to motion for summary judgment); *Muset v. Ishimaru*, 783 F. Supp. 2d 260, 372 (E.D.N.Y. 2011) (no appeal filed); *Pinson v. DOJ*, 2016 WL 29245 (D.D.C., Jan. 4, 2016) (new FOIA requests added to complaint).

Plaintiffs' Combined Opening/Response SJ Brief – 18

requirements of FOIA." 79 Fed. Reg. 22,855 (April 25, 2014). Thus, FOIA cannot provide an adequate remedy for DOE's violation of its own regulation, and the APA is the appropriate vehicle for Governor Andrus's Third Claim challenging DOE's violation of its own regulation. *See Nat'l Security Counselors v. C.I.A.*, 898 F. Supp. 2d 233, 266 (D.D.C. 2012).

As explained above, DOE has failed to articulate any reasonably foreseeable harm from releasing the information withheld under Exemption 5 pursuant to DOE's FOIA regulation.  SOF ¶ 18.  The only foreseeable harm identified by DOE is merely a conclusory restatement of the language in the Exemption itself.  *Id.* Yet the DOE regulation specifically directs that the agency release information that might otherwise be withheld under Exemption 5 when it would be "in the public interest" and is not prohibited by federal law. 10 C.F.R. § 1004.1.

The facts before the Court demonstrate there is high public interest in releasing the information requested by Governor Andrus regarding DOE's request that Idaho officials "waive" the Batt Agreement's ban on commercial spent nuclear fuel shipments to INL.  Yet DOE has utterly disregarded this public interest, failing to articulate any legitimate reason why it should not disclose the information pursuant to its own regulations.  Thus, this Court should grant summary judgment in favor of Governor Andrus on his APA claim.

## CONCLUSION

Governor Andrus respectfully requests that the Court grant him summary judgment, in whole or in part; deny DOE's motion for summary judgment; and order DOE to promptly release the wrongly withheld or redacted documents.

Dated:  April 6, 2016                                Respectfully submitted,

                                                     /s/ Laurence ("Laird") J. Lucas
                                                     Laurence ("Laird") J. Lucas (ISB# 4733)
                                                     Marc Shumaker (ISB# 9606)
                                                     Advocates for the West

Plaintiffs' Combined Opening/Response SJ Brief – 19

P.O. Box 1612
Boise, ID 83701
208-342-7024
llucas@advocateswest.org
mshumaker@advocateswest.org

Attorneys for Plaintiff Cecil D. Andrus