UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CECIL D. ANDRUS,<br><br>        Plaintiff,<br><br>            v.<br><br>UNITED STATES DEPARTMENT OF ENERGY,<br><br>        Defendant. | Case No. 1:15-cv-453-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. This case arises from a Freedom of Information Act request submitted by the Plaintiff, former Idaho Governor Cecil D. Andrus, to the Defendant United States Department of Energy.

## BACKGROUND

On January 22, 2015, Andrus submitted a FOIA request to the DOE seeking "copies of all communication between any officials of the United States Department of Energy and any official in the state [sic] of Idaho that is in any way related to a 'waiver' of the state [sic] of Idaho's 1995 settlement agreement (the so called Batt Agreement) with the Department of Energy." *FOIA Letter*, ¶ 1, Dkt. 11-5. The "Batt Agreement" is a 1995 settlement agreement negotiated between the State of Idaho, the Department of

Energy, and the United States Navy. *Batt Agreement*, Dkt. 11-5, Ex. A). The Batt

Agreement governs the treatment and disposal of nuclear waste in Idaho at the Idaho

National Laboratory ("INL") through the year 2035. *Id.* Andrus submitted the FOIA

request in response to concerns over negotiations between the State of Idaho and DOE

regarding a possible waiver of some of the State's rights under the Batt Agreement. In

2011, the DOE and the State of Idaho initiated a Memorandum of Agreement ("MOA")

that addressed certain conditions under which Idaho could waive its rights under the Batt

Agreement, which would allow DOE to send certain quantities of spent nuclear fuel from

commercial power plants to the INL. Subsequently, in December 2014, the DOE

expressed a desire to conduct tests of commercial spent nuclear fuel from various

sources, and determined that the INL was its best option for the tests. The DOE, pursuant

to the 2011 MOA, requested "conditional approval" from the State of Idaho officials for a

waiver of the Batt Agreement. The waiver would allow two proposed shipments of

commercial spent nuclear fuel to be sent to the INL. Andrus submitted his FOIA request

one month later.

On March 18, 2015, Andrus agreed to narrow the scope of his request to include

only those documents he originally requested that "relate to the December 2014 request"

from DOE to Idaho Governor Otter and Idaho Attorney General Lawrence Wasden

seeking a waiver "of paragraph D.2.e of the 1995 Settlement agreement," which "prohibit

DOE from shipping commercial spent nuclear fuel to INL (with one exception not

relevant here)." *See Letter from Laird Lucas to Shonda Humphrey, DOE, March 18,*

*2015*, Dkt. 11-5, Ex. 2. Andrus also agreed that the search would be limited to the time period between January 1, 2012, and January 22, 2015. *See E-Mail from Laird Lucas to Shonda Humphrey, DOE, April 28, 2015*, Dkt. 11-5, Ex. 3. It wasn't until July 10, 2015 that the DOE sent "a final response" for four of the five offices within DOE from which documents were collected, but stated that the fifth office would respond separately. Included in the DOE response was a letter and an index of the forty-one documents released under the FOIA request. *Letter from Alexander C. Morris to Cecil D. Andrus, July 10, 2015*, Dkt. 11-5, Ex. 4.

Of those forty-one documents initially released, the DOE had redacted information from thirty of the documents under Exemption 5 of FOIA. *See Vaughn Index*, December 18, 2015, Dkt. 16. 5. Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5; U.S.C. § 552 (b)(5). The agency specifically stated that the information was redacted to protect three specific privileges: the deliberative process privilege (executive), attorney-client privilege, and attorney work product privilege.

Dissatisfied with the information provided by DOE, Andrus filed an administrative appeal with the DOE's Office of Hearings and Appeals. Andrus alleged the DOE had not sufficiently disclosed the reasoning behind its redactions in the documents released. The appeal requested that the DOE either "release all of the information withheld under Exemption 5" or "provide specific descriptions of the

material withheld from each redacted document, the consequences of releasing those materials, and why disclosing the information is not in the public interest." *See Letter from Laird Lucas to Director Marmolejos*, *August 10, 2015*, Dkt. 11-5, Ex. 5.

On August 20, 2015, the DOE Office of Hearings and Appeals denied Andrus's appeal, stating that the decision was "a final order of the Department of Energy from which any aggrieved party may seek judicial review pursuant to the provisions of 5 U.S.C. § 552(a)(4)(B)." The order held that the DOE had provided sufficient information for Andrus to understand the DOE's basis for withholding information under Exemption 5 by agency standards, and that the release of the documents "could cause the harm of chilling open and frank discussions, limit government personnel's range of options to consider, and thus detract from the quality of Agency decisions." *Letter from Alexander C. Morris to Cecil D. Andrus, July 10, 2015*, Dkt. 11-5, Ex. 4. Andrus filed an initial Complaint with the Court on September 29, 2015. *See generally Compl*. Dkt. 1.

The Complaint sought relief under FOIA, alleging that the DOE's redactions under Exemption 5 were unlawfully invoked and unjustified, amounting to a FOIA violation under 5 U.S.C § 522(a). *Compl.* ¶ 43-44. The Complaint also sought a second claim under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* Andrus alleges that the "failure and refusal to release the requested information in the public's interest violates its own regulations" and is "arbitrary, capricious, an abuse of discretion, not in accordance with

the law and constitutes agency action unlawfully withheld or unreasonably delayed under the APA." *Compl.* ¶ 46.

On October 5, 2015, DOE disclosed an additional thirty-eight documents from the fifth and final DOE office. Similar to the July 10 disclosure, thirty-three of the responsive documents were redacted under FOIA Exemption 5, citing the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege as the specific reasons for exemption. *See Letter from Alexander C. Morris to Cecil D. Andrus*, Dkt. 11-5, Ex. 6.

Andrus did not seek an administrative appeal following the second release of the thirty-eight documents. Instead, Andrus filed an Amended Complaint with the Court on October 19, 2015. *See Am. Compl.* The Amended Complaint incorporated the October 5 release of documents and cited DOE's redactions as insufficiently justified and therefore in violation of FOIA and the APA. *Id.* at ¶ 44-49. Andrus also amended his complaint to allege an additional claim for a failure to timely respond to his FOIA request, in addition to the unlawful application of FOIA exemptions claim and the APA claim. *Id.* ¶ 50-61 (emphasis added).

Most recently, DOE made a third disclosure on April 8, 2016, of eight documents that had previously been withheld. *Pl.'s Reply* at 7. This disclosure was apparently in response to plaintiff's assertion in his Response Brief that DOE had not turned over all relevant documents, although the DOE characterizes the release as a "discretionary release." *Def's Reply* at 10, fn. 5.

DOE filed a motion for summary judgment seeking an order 1) dismissing Andrus's claim that DOE failed to timely respond to his FOIA claim as moot, 2) dismissing Andrus's APA claim because FOIA provides an adequate remedy, and 3) grant summary judgment on Andrus's claim challenging the agency's withholdings under Exemption 5. *See generally Def's Br.* Dkt. 11-1. Andrus subsequently filed Cross-Motions for Summary Judgment for all three Claims for Relief on the basis that 1) DOE's untimely response to Andrus's FOIA request was a violation of the statute, 2) DOE failed to carry its burden of proof regarding the Exemption 5 redactions, and 3) DOE's failure to release all relevant documents in the "public interest" under its own regulations was a violation of the APA. *See generally Pl's Resp.* Dkt. 15-1.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc*., 477

U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case."  *Id.* at 248.

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes.  *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no material factual disputes – does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Deveraux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch.*

*Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted).   Instead, the "party

opposing summary judgment must direct [the Court's] attention to specific triable facts."

*Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

In FOIA cases, "Courts are permitted to rule on summary judgment…solely on the

basis of government affidavits describing the documents sought." *Lion Raisins v. United*

*States Dep't of Agriculture*, 354 F. 3d 1072, 1082 (9th Cir. 2004). The government has

the burden of defending its actions and ordinarily "the government must submit detailed

public affidavits identifying the documents withheld, the FOIA exemptions claimed, and

a particularized explanation of why each document falls within the claimed exemption."

*Id.* Such submissions must be "detailed enough for the district court to make a *de novo*

assessment of the government's claim of exemption." *Id.*

## ANALYSIS

### 1. **Exhaustion**

DOE alleges that Andrus did not fully exhaust his administrative remedies

regarding the October 5, 2015 FOIA disclosure. Because DOE asserts that exhaustion is a

jurisdictional requirement, the Court shall address that issue first. It is undisputed that

Andrus exhausted his administrative remedies pertaining to the documents released on

July 10, 2015. However, DOE did not have the same opportunity to fully review the

thirty-eight documents belatedly disclosed by DOE on October 5, 2015. Andrus had

already initiated this litigation regarding the July 10, 2015 documents when DOE

released the final documents in October. *See generally Compl.* After Andrus received the

October documents, he did not file a second appeal to the DOE Office of Hearings and Appeals. Instead, Andrus amended his initial complaint to reflect the newly obtained documents. *See Am. Compl* ¶ 44-46. Thus, the DOE Office of Hearings and Appeals did not have an opportunity to review the thirty-eight documents belatedly released on October 5, 2015.

Of preliminary concern to the Court is the contention that there is a split among the United States Court of Appeals regarding the issue of whether exhaustion under FOIA is a jurisdictional requirement, or rather "a prudential consideration that the court takes into account in determining whether to exercise subject matter jurisdiction." *McDonnell v. United States*, 4 F. 3d 1227, 1240 at fn. 9. (3rd Cir. 1993). Significantly, the FOIA statute does not expressly require exhaustion, but instead merely *implies* that it is otherwise required:

> Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.

5 U.S.C. s 552(a)(6)(C). Certainly the statute contemplates that exhaustion will be required by the Courts, but does not expressly mandate it.

DOE argues that the Ninth Circuit addressed the FOIA exhaustion issue thirty years ago in *In re Steele*, 799 F. 2d 461, 465 (9th Cir. 1986) and concluded that exhaustion is jurisdictional. In *Steele*, the Ninth Circuit stated that "exhaustion of a parties' administrative remedies is required under the FOIA before that party can seek judicial review." The *Steele* Court ultimately held, "where no attempt to comply fully

with agency procedures has been made, the courts will assert their lack of jurisdiction under the exhaustion doctrine." *Id.* at 466. DOE, along with some other courts, cite this language for the proposition that exhaustion is a jurisdictional requirement that otherwise divests the courts of discretion to entertain a party's claim. *See Hull v. I.R.S., U.S Dept. of Treasury*, 656 F. 3d 1174, 1181–82 (10th Cir. 2011) (ultimately concluding FOIA exhaustion is not a jurisdictional requirement); *see also San Luis & Delta-Mendota Water Authority v. U.S. Department of the Interior*, 2016 WL 80631 at *4 (E.D. Cal. Jan. 7, 2016) (court undecided whether *In re Steele* conclusively makes FOIA exhaustion jurisdictional).

However, the Court is not convinced that the Ninth Circuit would reach that same conclusion today – especially if confronted with the issue in a more straight-forward FOIA context. It should first be noted that despite the previously stated language in *Steele*, the *Steele* Court still entertained (although ultimately rejected) the petitioner's argument that the "futility exception to the exhaustion doctrine should apply." *In re Steele*, 799 F. 2d at 466. The "futility exception" applies when a party has failed to exhaust its administrative remedies, but to do so would not "further the purposes underlying the doctrine of exhaustion." *Id.* If exhaustion was strictly jurisdictional, the Ninth Circuit would have had no need to address the issue of the "futility exception" at all. In that sense, *In re Steele* actually supports a conclusion that exhaustion is a jurisprudential doctrine, rather than a jurisdictional one.

In fact, a majority of circuits have expressly held that the FOIA exhaustion requirement is a "jurisprudential" doctrine because FOIA "does not unequivocally make the exhaustion requirement jurisdictional." *See Hull*, 656 F. 3d at 1182; *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (FOIA exhaustion is a jurisprudential doctrine); *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir.1979) (explaining that FOIA does "not expressly require that a claimant exhaust his administrative remedies prior to requesting judicial relief"); *Matter of Lawrence*, 4 F.3d 996 (table), 1993 WL 360952 at *2 n. 3 (7th Cir.1993) (unpublished) ("Exhaustion, however, is not jurisdictional in FOIA cases, so we reach the merits now rather than requiring exhaustion which would ultimately be futile."). For lack of unequivocal language in FOIA otherwise requiring exhaustion for purposes of subject matter jurisdiction, the Court therefore considers exhaustion under FOIA a jurisprudential requirement.

Whereas Andrus's failure to exhaust his administrative remedies pertaining to the October 5, 2015 DOE documents does not divest the Court of jurisdiction, it must nevertheless consider the underlying purposes of exhaustion when determining DOE's cross motion for summary judgment. The doctrine of exhaustion is intended to allow the agency to "exercise its discretion and expertise and the opportunity to make a record for the district court to review." *In re Steele*, 799 F. 3d at 466. Exhaustion is generally intended to prevent "premature interference with agency processes. . . afford[ing] the parties and the courts the benefit of [the agency's] experience and expertise. . . [or] compil[ing] a record which is adequate for judicial review." *Hidalgo*, 344 F. 3d at 1259.

Specifically in cases where an agency's use of FOIA's subsection (b) exemptions are at issue, "[the agency] should be allowed to submit to the district court a detailed affidavit describing how disclosure would risk harm or seek an *in camera* review of the documents by the district court." *Id.* (citing *Hardy v. Bureau of Alcohol, Tobacco, & Firearms*, 631 f. 2d 653, 657 (9th Cir. 1980)).

The Court is sympathetic to Andrus's argument that the DOE is unlikely to have significantly altered its redactions had Andrus actually initiated an administrative appeal following the October 5, 2015 disclosure. As demonstrated by the documents the DOE released in their "discretionary" disclosure on April 8, 2015, the DOE seemingly took a liberal interpretation of FOIA's subsection (b) exemptions. *See generally April 8, 2015 Disclosure*, Dkt. 22-2.  Also, as discussed in greater detail below, the *Vaughn* index and affidavit provided as justification for their use of the exemptions are conclusory and inadequate. *See Vaughn Index, December 18, 2015, Attach. D.*, Dkt. 16 at 1-12; *Aff. Alexander C. Morris*, Dkt. 19-2. However, the Court should not engage in guesswork, and the underlying policy considerations of the doctrine of exhaustion require the Court to dismiss Andrus's claim regarding the October 5, 2015 documents to be further reviewed by the DOE. Ultimately, judicial resources are best conserved when an agency conscientiously reviews its own documentation for privileged information. *See In re Steele*, 799 F. 2d at 466; *see also Lion Raisins v. U.S. Dept. of Agriculture*, 354 F. 3d 1072, 1082 (9th Cir. 2004). While merely a jurisprudential doctrine, the underlying

policy of exhaustion—to provide the agency an opportunity to review its own decision-making process before judicial intervention—must still carry the day.

Hopefully, the DOE, given an opportunity to review the October 5, 2015 documents, will make a concerted effort to ensure the subsection (b)(5) redactions have been used as narrowly as intended. Furthermore, where the DOE ultimately determines such redactions are justified, it should provide a detailed and unambiguous *Vaughn* index, unlike those documents that were provided for the Court in this proceeding. Keeping in mind 10 C.F.R § 1004.1, the DOE should also consider whether the information is in the "public interest." But because the agency has not had the opportunity to implement a review of its FOIA redactions pertaining to the October 5, 2015 documents, the Court must grant DOE's Motion for Summary Judgment and dismiss Andrus's FOIA claims regarding the October 5, 2015 documents without prejudice.

## 2. Mootness

DOE seeks summary judgment on Andrus's First Claim for Relief on the premise that the claim is moot. Andrus's First Claim for Relief is for a "failure to timely respond to FOIA Request." *Am. Compl.* at ¶ 50-56. Andrus conceded in oral argument that all responsive documents, to his knowledge, have been disclosed. A claim is moot "when the issues presented are no longer "live or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013). This does not preclude Andrus from pursuing the Second Claim for Relief that DOE has applied an unlawful application

of FOIA exemptions. *See Am. Compl.* at ¶ 57–59. DOE's motion for summary judgment

for the First Claim for Relief will be granted.

### 3. Exemption 5 of the Freedom of Information Act

Both parties seek summary judgment on the issue of whether DOE has provided a

sufficient basis for claiming Exemption 5 redaction privileges. For the foregoing reasons,

the Court does not find the affidavit and *Vaughn* index provided by DOE sufficient to

grant either party's Motion for Summary Judgment at this time. The Court will therefore

exercise its discretion under section 552(a)(4)(B) and conduct an *in camera* review of the

documents to ensure the underlying material is properly redacted.

FOIA became law in 1946 as part of the Administrative Procedure Act, but was

amended in 1966 to further implement a "general philosophy of full agency disclosure."

S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965). When furnished with a reasonable

request for records, the Act requires agencies to make such records "promptly available

to any person." 5 U.S.C. § 552(a)(3)(A). Should an agency withhold any documents, "the

district court of the United States . . . has jurisdiction to enjoin the agency from

withholding agency records and to order any agency records improperly withheld from

the complainant." §552(a)(4)(B).

Subsection (b) of FOIA provides for nine "exemptions" to the otherwise "broad"

policy that favors disclosure. *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615,

630 (1982). These exemptions are an attempt to balance the limited interests of

government agencies to maintain sensitive and confidential information. *See Dep't. of Air*

*Force v. Rose*, 425 U.S. 352, 361 (1976). However, the United States Supreme Court recognizes "these exemptions are explicitly made exclusive . . . and must be narrowly construed." *Id.* An agency may withhold only that information to which the exemption applies, and so must provide all "reasonably segregable" portions of that record to the requester. *Yonemoto v. Dep't. Of Veterans Affairs*, 686 F. 3d 681, 688 (9th Cir. 2011). In the event of nondisclosure, such as under subsection (b) of the Act, "the burden is on the agency to sustain its action" and may be subject to an *in camera* review to ensure compliance.  *Id. In camera* review is appropriate "only after the government has submitted as much detail in the form of public affidavits and testimony as possible." *Lion Raisins*, 354 F. 3d at 1083. However, the justification does not need to go so far that the disclosure would "undermine the very purpose of its withholding." *Id.* at 1084.

Subsection (b)(5) excludes from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. 552 (b)(5). As such, the exemption "contemplates that the public is entitled to all such memoranda or letters that a private party could discover in litigation with the agency." *N.L.R.B v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The exemption applies to generally recognized privileges such as the executive privilege, the attorney-client privilege, and the attorney work-product privilege. *Id.* at 149.

All thirty of the July 10, 2015 DOE documents that were redacted under Exemption 5 are emails. *See generally Vaughn Index*, December 18, 2015, Dkt. 16. All

but ten of the redacted documents were emails sent to four or more recipients and may be considered "email chains." *See Attachment A: July 2015 documents*, Dkt. 16-2. In all cases, the headers of the emails are visible so that one may view who the emails were sent from, who they were sent to, and the subject line. *Id.* The contents of those documents have been redacted to varying degrees. *Id.*

In order to support their redactions, DOE submitted a *Vaughn* index and an affidavit from the FOIA Officer in the DOE Office of Information Resources (OIR). *See Vaughn Index, December 18, 2015, Attach. D.*, Dkt. 16 at 1-12; *Aff. Alexander C. Morris*, Dkt. 19-2. The *Vaughn* index is composed of eight columns that identify the document number, the date of origin, the author of the document, the recipients of the document, a brief description of the subject matter, the number of pages of each document, the basis for the (b)(5) redaction, and then a brief description of the reason behind the redaction. *Vaughn Index, December 18, 2015, Attach. D.*, Dkt. 16 at 1. DOE has not identified the title or "authority" of the individuals involved. *See generally*, *Id.* However, Andrus has not contested that the emails are "exclusively between DOE employees" and thus fall under the "inter-agency or intra-agency" requirement of Exemption 5. *Def's. Br.* at 12.

All of the "Redaction Reason" responses are nearly identical. Take for example the description of document NE-2: "The material redacted in these emails is both pre-decisional and deliberative, reflecting discussions regarding SNF rods and electrochemical recycling projects." *Vaughn Index, December 18, 2015, Attach D.*, Dkt. 16 at 1. Every document rationale restates that "The material redacted in these emails is

both pre-decisional and deliberative, reflecting discussions regarding. . ." and then states the subject matter of the email. *Vaughn Index, December 18, 2015, Attach D.*, Dkt. 16 at 1-12. There are seven documents that in addition to the deliberative process privilege, also claim attorney-client privilege, attorney work product privilege, or all three. *Id.* In these instances, DOE merely adds language to the "Redaction Reason" column analogous to the response given in document CI-1: "Some material is also redacted as privileged attorney-client communication." *Id.* at 8. No further basis asserting the attorney-client privilege or the attorney work product privilege is given. There is no way to determine which portions of the seven "multi-privilege" documents are claimed under which privilege, although all three are equally applicable under FOIA exemption (b)(5).

The affidavit of Alexander C. Morris states generally that an analyst in OIR was assigned to Andrus's FOIA request to identify information "not exempt from disclosure or for which a discretionary waiver of exemption could be applied," and that the information redacted "has been reviewed to ensure that all reasonably segregable information has been released to the Plaintiff." *Aff. of Alexander C. Morris*, May 2, 2016, Dkt. 19-2 at ¶4. Paragraph 5 states:

> Exemption 5 Deliberative Process Privilege: Exemption 5 incorporates the deliberative process privilege, which protects recommendations, advice, and opinions that are part of the process by which agency decisions and policies are formulated. The information withheld under Exemption 5's deliberative process privilege consists of email chain discussions on the negotiations related to the proposed shipments of commercial spent nuclear fuel (SNF) and other DOE projects and proposals; draft versions of documents, including the Dominion Title Transfer Agreement; and internal briefing memoranda related to negotiations with the State of Idaho regarding the proposed commercial SNF shipments.

*Id.* at ¶ 5. Paragraph 6 then states that "the withheld materials do not represent final agency action and their release would have a chilling effect on the ability of DOE staff to have open and frank discussions. . . ." *Id.* at ¶ 6. Paragraph 7 addresses the attorney-client privilege, and states that "the withheld information consists of legal advice sought by DOE program staff from [DOE Office of General Counsel (GC)] and legal advice provided by GC regarding negotiation strategy. . . ." *Id.* at ¶ 7. Paragraph 8 similarly applies to the attorney work product privilege.

Through this understanding of FOIA Exemption 5, the documents disclosed on July 10, 2015, and the DOE *Vaughn* index and FOIA officer affidavit provided to justify the agency's redactions, the Court may determine as a matter of law whether the DOE was justified in its redactions, or whether further scrutiny may be needed.

A.   *Deliberative Process Privilege*

Andrus's primary challenge to the Exemption 5 redactions is that the DOE has applied the privilege in an overly broad manner, whereas DOE seeks Summary Judgment that the redactions are justified. Although it is possible that the redacted information is properly exempted under the privilege, "the burden is on the agency to sustain its action." *Yonemoto*, 686 F. 3d at 688. The DOE's conclusory *Vaughn* index descriptions and FOIA officer affidavit do not provide the Court with adequate information to carry the agency's burden.

The purpose of the deliberative process privilege is to "allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of

public scrutiny." *Assembly of the State of Cal.*, 968 F. 2d at 920. This privilege applies to documents that are both "predecisional and deliberative." *Id.* A "predecisional" document may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (citing *Formaldehyde Inst. v. Dep't of Health and Human Services*, 889 F. 2d 1118, 1122 (D.C. Cir. 1989). The Court may differentiate between "predecisional communications, which are privileged . . . and communications made after the decision and designed to explain it, which are not." *Sears, Roebuck & Co.*, 421 U.S. at 152. A predecisional document is a part of the "deliberative process" if the disclosure of the materials would "expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.*

Context can be inferred from the twenty-three documents that DOE identifies as exempted solely under the deliberative process privilege to suggest that they *could* be predecisional and deliberative in nature, but the information provided in the DOE's *Vaughn* index and the FOIA officer affidavit is insufficient to make an affirmative conclusion. Among the July 10 disclosure documents, there are essentially ten different "primary topics" that the emails are discussing:

- Meeting and plans regarding SNF rods and electrochemical recycling

- Idaho Falls Register News Article*

- Letter Written to Governor Otter from Richard Provencher*

- Emails regarding Finnish Reactor material and the MOA for fuel shipments

- Discussions with the State and signature of Title Transfer

- Letter from Governor Otter to Secretary Moniz*

- Letter from Secretary Moniz to Governor Otter*

- An update for the Idaho Congressional Delegation*

- A Department of energy Idaho Operations Office Report (Jan. 20, 2015)*

- Preparations for General Klotz Delegation

*Attachment A: July 2015 documents*, Dkt. 16-2; *Vaughn Index, December 18, 2015, Attach D.*, Dkt. 16 at 1-12. Those topics marked with an asterisk (*) above denote email chains relating to specific, underlying documents. For all such topics, the underlying document was ultimately disclosed in its entirety, and the redactions likely correspond to individual responses or suggestions that would ordinarily fall under the deliberative process privilege.

However, because of the deficiencies in the DOE's *Vaughn* index, the Court cannot ascertain whether the documents truly reflect "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" or otherwise. *Assembly of the State of Cal.*, 968 F. 2d at 920. The index does not identify the authority of the document authors, and there is no way to determine whether the redacted information is "deliberative" or may be considered more "factual" in nature. *See id* at 21 ("rule of thumb favoring disclosure of factual documents, or the factual portions of deliberative

documents where separation is feasible"). Furthermore, the other four document topics not denoted with an asterisk are entirely opaque and it is unclear what the nature of the conversations truly were.

For example, redacted documents CI-3 through CI-6 involve a January 15, 2015 email chain sent to more than ten different recipients under the subject "Idaho Update." *Attachment A: July 2015 documents*, Dkt. 16-2 at 108-116. These documents were among those belatedly released in the April 8, 2016 "discretionary" disclosure. *April 8, 2015 Disclosure*, Dkt. 22-2. In document CI-5, the email states that "the below is a good update on where we are with the Idaho issue" and forwards on an email the author, Jaime Shimek, had earlier sent to others—including an email assigned to the office of Idaho Senator Mike Crapo. *Id.* at 10. Although the "update" is exactly what one would expect– an entirely factual summary of the Batt Agreement negotiations as of January 15, 2015– the emails were originally redacted in their entirety. *Id.* Not only is factual information not protected under the Deliberative Process Privilege, the privilege would not apply because it was sent to a Congressional Delegation. *See* 5 U.S.C. § 551(1). More troubling still, the *Vaughn* index merely gave the boilerplate "Redaction Reason" described above, stating that the emails involved "discussions on updates to the Idaho congressional delegation and the delegation's response to the update." *Vaughn Index, December 18, 2015, Attach D.*, Dkt. 16 at 9.

In finding that the DOE's *Vaughn* index and affidavits are conclusory and insufficiently detailed, the Court must conduct an *in camera* review of these documents

in order to sufficiently determine whether the deliberative process privilege has been

properly invoked, or whether further disclosure is ultimately appropriate.

**B.**     ***Attorney Client Privilege and Attorney Work Product Privilege***

Both parties also seek Summary Judgment regarding the DOE's invocation of the

attorney-client privilege and the attorney work product privilege. The Court will similarly

apply an *in camera* review of the relevant documents to determine whether the DOE's

redactions were proper.

The attorney-client privilege protects confidential communications between clients

and counsel made for the purpose of obtaining or providing legal assistance. *See In re*

*Grand Jury Proceeding*, 721 F.2d 1221, 1222 (9th Cir. 1983). The work product doctrine

protects materials produced by an attorney—including by a government attorney—that

reflect the attorney's mental impressions, opinions, or legal theories formed in

anticipation of litigation or in pre-litigation counseling. See Fed. R. Civ. P. 26(b)(3);

*Sears, Roebuck & Co.*, 421 U.S. at 154. DOE's *Vaughn* index states that there are 7

documents (NE-13, NE-15, NE-16, NE-20, NE-21, NE-22, CI-1) that fall under either the

attorney-client privilege or work product privilege (or both), in addition to the

deliberative process privilege. *Vaughn Index, December 18, 2015, Attach D.*, Dkt. 16 at

4-8.

*In camera* review is required to analyze DOE's assertion of attorney-client

privilege and work product privilege because 1) the information redacted under either

privilege is indistinguishable from the information redacted under the deliberative

process privilege and 2) because the titles of the authors and recipients are unknown and the *Vaughn* index so nondescript, there is no way to establish how legal counsel is implicated in any of the documents. *Id.* It is also persuasive that none of the documents withheld under attorney-client privilege are labeled "confidential." *Id.*

These lapses in DOE's exemption justifications require a greater inquiry into the contents of all the redacted documents. This order is consistent with FOIA's underlying "general philosophy of full agency disclosure." S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965). Thus an *in camera* review shall be conducted regarding all of the July 10, 2015 documents.

### 4. Administrative Procedure Act

DOE seeks summary judgment on Andrus's claim under the Administrative Procedure Act (APA), whereas Andrus has filed a Cross-Motion seeking a Summary Judgment in his favor as a matter of law. *Def's Br.* at 7, Dkt. 11-1; *Pl's Resp.* at 18, Dkt. 15-1.

The APA provides relief for "agency actions made reviewable by statute and final agency action for which there is no other adequate remedy in a court. . . ." 5 U.S.C. §704. Andrus argues that he has a claim under the APA because the DOE did not adhere to 10 C.F.R. § 1004.1, which requires the DOE to disclose documents "in the public interest." *See* 10 C.F.R § 1004.1. The regulation requires DOE to make a determination as to whether disclosure was "in the public interest" and, if so, release the documents upon request, even if the documents would otherwise be exempt from disclosure under FOIA.

*Id.* Under the APA, the Court may intervene if the agency action is found to be "arbitrary, capricious, an abuse of discretion, [ ] otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (F). The United States Supreme Court recognizes that "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its conduct, including a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962). Andrus asks the Court to make a determination of whether the information is "in the public interest," whereas DOE asserts that the Court may not have jurisdiction to entertain an APA claim under FOIA, and alternatively that it has met its duties under the agency regulation. *Def's* Reply, at 5-6, Dkt. 19.

The Court rejects the argument that it does not have jurisdiction under the APA to review "final agency action for which there is no other adequate remedy" such as DOE's determination of whether documents are "in the public interest." *See Def's Reply*, at 5, fn. 3, Dkt. 19. DOE cites *Minnesota v. DOE*, No. 4-81-434, 1982 WL 1155, at *8 (D. Minn. Dec. 14, 1982) in which the court held that there was "no such legislative grant of authority under the Trade Secrets Act, 18 U.S.C. § 1905; *Chrysler v. Brown, supra*; nor in the Administrative Procedures Act, 5 U.S.C. § 701." *Id.* at *8. In reality, the Supreme Court specifically recognized that an agency regulation was subject to review for an

abuse of discretion under the APA, even though it was not reviewable under the Trade Secrets Act and in contravention of 18 U.S.C. § 1905. *See Chrystler v. Brown*, 441 U.S. 281, 317–18 (1979) ("Both Chrysler and the respondents agree that there is APA review of DLA's decision. They disagree on the proper scope of review"). Under the plain language of § 706 of the APA, the agency decision is reviewable so long as it is "final" and there is no other adequate remedy. Accordingly, the Court may consider the APA challenge.

DOE also seeks summary judgment on the basis that the relief sought under Andrus's APA claim is the same as that sought under the FOIA claim, and therefore FOIA provides an "adequate remedy." 5 U.S.C. § 704. The United States Supreme Court has defined "adequate remedy" under § 704 as "situations where the Congress has provided *special and adequate* review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (emphasis added). The Supreme Court has acknowledged that the Congressional purpose of the APA was to "provide a general authorization for review of agency action in the district courts" while still seeking to avoid "duplication" of judicial remedies. *Id.*

Historically, most case law on this issue has precluded simultaneous FOIA and APA claims because FOIA provided the plaintiffs an "adequate remedy." *See Rimmer v. Holder*, 700 F.3d 246, 261-63 (6th Cir. 2012); *Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agriculture*, 643 F.3d 1142, 1148-49 (8th Cir. 2011); *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 537-38 (7th Cir. 2005); *Petrucelli v. Dep't of Justice*, 106 F. Supp.

3d 129, 134 (D.D.C 2015). However, all of the cases cited by DOE involve instances where a FOIA requester has sought to challenge the sufficiency of FOIA exemptions through an APA claim. *See id.*, *supra.* There is no doubt that where a party is purely seeking to challenge the sufficiency of an agency's application of FOIA exemptions, FOIA—not the APA—is the proper cause of action. However, merely challenging the sufficiency of DOE's subsection (b)(5) exemptions is not Andrus's objective in the present APA claim. Rather, Andrus's APA claim asks DOE to disclose documents that are in the "public interest," *regardless of whether a FOIA exemption applies. See Pl.'s Resp.* at 18-19, Dkt. 16; 10 C.F.R § 1004.1.

Section 1004.1 is highly unusual in that it places a duty upon DOE above and beyond what is normally required under FOIA. *Id.* Section 1004.1 requires that DOE "make records available," even when it is "authorized to withhold" them under FOIA, whenever it determines "such a disclosure is in the public interest." *Id.* This regulation, in essence, requires DOE to completely disregard FOIA subsection (b) when a request is in the public interest. There is no provision under FOIA that requires the agency to consider the general public interest, whereas that is the gravamen of § 1004.1. In this particular instance, FOIA alone does not provide "special and adequate review procedures" by which Andrus could ensure documents in the public interest should be released. For example, there could be information properly redacted under a FOIA exemption which includes information that the public has such a high interest in.  In those circumstances,

the DOE would be required to disclose under 10 C.F.R § 1004.1. For that reason, DOE's argument fails.

During oral argument, Andrus sought APA relief as an alternative means for the Court to review the October 5, 2015 documents disclosure, notwithstanding the FOIA exhaustion doctrine. However, under the APA, the Court may only review "final" agency actions for which there is no alternative remedy. *See* 5 U.S.C. §704. Because Andrus did not file an administrative appeal for the October 5, 2015 documents, the DOE's decision cannot be "final" for purposes of APA relief. *Id.* The exhaustion requirement discussed above is therefore still applicable under the APA, and relief may not be accorded at this time. In fact, exhaustion is considered a "jurisdictional" requirement under the APA. *See Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("primary thrust of § 704 was to codify the exhaustion requirement. . .").

Regarding the July 10, 2015 documents, however, the Court finds that the APA is applicable. DOE's determination of whether the information was in the "public interest" is "arbitrary, capricious, or an abuse of discretion" and therefore in violation of the APA. 5 U.S.C. § 706(2)(A).

In both the letter provided to Andrus by the DOE OHA, as well as the affidavit of the DOE FOIA officer, DOE asserted that it analyzed whether the public interest would be served by disclosure. *Letter from Alexander C. Morris to Cecil D. Andrus, July 10, 2015*, Dkt. 11-5, Ex. 4; *Aff. Alexander C. Morris*, Dkt. 19-2 at ¶ 10-11. The relevant DOE authorities found that the policy factors did not favor disclosure because doing so "could

cause the harm of chilling open and frank discussions [within the agency], limit government personnel's range of options to consider, and thus detract from the quality of Agency decisions." *Letter from Alexander C. Morris to Cecil D. Andrus, July 10, 2015*, Dkt. 11-5, Ex. 4. Whereas such an evaluation certainly underscores the underlying policy of the FOIA (b)(5) exemption, such a determination has no bearing on whether the information is in the "public interest" as required by 10 C.F.R § 1004.1. DOE's justification was nothing more than a recitation of the *agency's* interest in non-disclosure. The DOE affidavit and *Vaughn* index do nothing to address whether the redactions buried information relating to substantive policy about the transport and storage of large quantities of potentially dangerous nuclear waste, disclosure of which may very well be in the public interest. Although the Court does not have authority to substitute its judgment for that of the DOE, the Court will require the DOE to reevaluate the redacted information that was responsive to Andrus's FOIA request, and determine whether any would relate to the *public's* interest, rather than that of the agency itself. In the event DOE determines information is *not* in the public interest, it should articulate justifications in a highly detailed and specific manner, addressing the substance of the information, not merely the policy underlying exemption.

Andrus has properly challenged the DOE's decision-making process under the APA and 10 C.F.R. § 1004.1. The Court therefore denies DOE's Motion for Summary Judgment and grants Andrus's Cross-Motion for Summary Judgment on the Third Count of Relief pursuant to the APA.

# ORDER

**IT IS ORDERED:**

1.     Defendant's Motion for Summary Judgment (Dkt. 11) is **GRANTED in part** and **DENIED in part** as explained above.

2.     Plaintiff's Motion for Summary Judgment (Dkt. 15) is **GRANTED in part** and **DENIED in part** as explained above.

3.     The Court understands from informal communications that Court staff had with counsel after the hearing that Defendant will be able to provide the Court with the documents for *in camera* review in short order. Accordingly, counsel for Defendant shall provide the Court with the documents within one week of the date of this Order. If counsel have questions concerns with this deadline, they may contact Jeff Severson at (208) 334-9027.

DATED: August 8, 2016

B. Lynn Winmill
Chief Judge
United States District Court